WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robert Earl Strickland,<br><br>                    Plaintiff,<br><br>v.<br><br>GE Capital Retail Bank,<br><br>                    Defendant. | No. CV-14-02774-PHX-BSB<br><br>**ORDER** |

In this employment action, Plaintiff Robert Earl Strickland alleges that Defendant GE Capital Bank (GECRB or Defendant)[1] violated the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101-12103. (Doc. 9.) Specifically, in the Amended Complaint, Plaintiff alleges that GECRB violated the ADA by issuing him a corrective action notice on December 23, 2013 based on his alleged disability, diabetes mellitus.[2] (Doc. 9 at 4-6.) On March 4, 2015, Defendant filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) arguing two reasons why the Court should dismiss the Amended Complaint. (Doc. 12.) First, Defendant argues that the Amended Complaint fails to state claim for which relief can be granted because Plaintiff released all claims he may have

---

[1] Defendant clarifies that it is correctly identified as Synchrony Bank, f/k/a GE Capital Retail Bank. (Doc. 12 at 1.)

[2] On February 3, 2015, the Court dismissed Plaintiff's claim based on Defendant's alleged failure to hire him for a particular position in 2012. (Doc. 10 at 5-6.) Accordingly, the only remaining claim is Plaintiff's claim that Defendant discriminated against him in violation of the ADA by issuing a corrective action in December 2013. (*Id.* at 5.)

1 had against Defendant when he executed a release in exchange for a layoff benefit
2 payment. (*Id.* at 1-2.) Second, Defendant argues that Plaintiff fails to state a claim
3 because his ADA claim is time barred. (*Id.*) Specifically, Defendant argues the Court
4 should dismiss Plaintiff's ADA claim because Plaintiff did not file suit within ninety days
5 of receiving his right-to-sue notice. (*Id.*)

6 On March 19, 2015, Plaintiff filed a response in opposition to Defendant's motion.
7 (Doc. 18.) Plaintiff does not dispute that he signed a release. (Doc. 18 at 2.) Rather, he
8 argues that he was forced to sign the release to receive lay off pay. (*Id.*) Second,
9 Plaintiff argues that this action was timely filed because he did not receive the right-to-
10 sue notice until September 30, 2014. (*Id.*) Defendant filed a reply in support of its
11 motion to dismiss. (Doc. 21.) Plaintiff then filed a supplemental response to Defendants'
12 motion.[3] (Doc. 23.)

13 After reviewing the parties' filings, on April 17, 2015, the Court converted the
14 motion to dismiss to a motion for summary judgment under Rule 56. (Doc. 22.) The
15 Court gave the parties until April 24, 2015 to file supplemental materials relevant to the
16 motion for summary judgment. (*Id.*) On April 23, 2015, Plaintiff filed a response to the
17 Court's order and asserted that he stated a claim for which relief can be granted and
18 established that the Court has jurisdiction over his claims. (Doc. 24.) Defendant did not
19 file any additional materials in response to the April 23, 2015 Order. As discussed
20 below, the Court finds that this action is timely, but grants Defendant's motion and
21 dismisses this action with prejudice because Plaintiff released his claims.[4]

22 **I.    Summary Judgment Standard**

23 A party seeking summary judgment "bears the initial responsibility of informing
24 the district court of the basis for its motion, and identifying those portions of [the record]
25 which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*

---

[3] Plaintiff did not request permission to file a supplemental response. However, Defendant did not object to that filing and the Court will consider it.

[4] The parties consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). (Docs. 7, 16, 17.)

1  *Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Summary judgment is appropriate if the
2  evidence, viewed in the light most favorable to the nonmoving party, shows "that there is
3  no genuine dispute as to any material fact and that the movant is entitled to judgment as a
4  matter of law."  Fed. R. Civ. P. 56(a).  Only disputes over facts that might affect the
5  outcome of the suit will preclude the entry of summary judgment, and the disputed
6  evidence must be "such that a reasonable jury could return a verdict for the nonmoving
7  party."  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).

**II.   Background**

Defendant provides financing services; Plaintiff worked for Defendant as a collection representative.  (Doc. 9 at 3; Doc. 12 at 2.)  Plaintiff alleges that Defendant discriminated against him by issuing him a corrective action on December 23, 2013 based on his disability.  (Doc. 9 at 4-6.)  He asserts that because of the corrective action he could not apply for another position with Defendant after a layoff was announced a week later and, therefore, he was forced into unemployment.  (*Id.* at 4.)

On December 31, 2013, Defendant notified Plaintiff that the collection department was being relocated and that his job was being eliminated.  (Doc. 9 at 4; Doc. 12 at 3, Exs. 1, 2.)  On January 15, 2014, Defendant offered Plaintiff a "Layoff Benefit" and presented him with a release.  (Doc. 12, Ex. 2.)  On March 12, 2014, Plaintiff executed the release.  (*Id.*)  In exchange for executing the release, Plaintiff received the "Layoff Benefit," or a severance payment, of approximately six weeks' pay.  (Doc. 12, Ex. 1, 2.)  Plaintiff also received subsidized insurance benefits for a total of six months.  (*Id.*)  Plaintiff's signed release includes an agreement to "waive and release all waivable claims of any kind (whether known or unknown, to the fullest extent permitted by law) . . . which arise from or relate to [his] employment and/or the termination of [his] employment with the Company."[5]  (Doc. 12, Ex. 2.)  Plaintiff also agreed that the claims he was releasing include "any and all claims of discrimination . . . on the basis of . . . disability."  *Id.*

---

[5] The Notice of Layoff includes this same language.  (Doc. 12, Ex. 1.)

- 3 -

According to his Amended Complaint, on September 11, 2014, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) alleging disability discrimination. (Doc. 9 at 2.) In the Amended Complaint, Plaintiff alleges that the EEOC dismissed his charge and that he received his ninety-day right-to-sue notice on September 24, 2014. (*Id.* at 3.) However, in his response and supplemental response, Plaintiff alleges that he received the right-to-sue notice on September 30, 2014. (Docs. 18 at 2; Doc. 23 at 1.)

**III.   Timeliness of Plaintiff's ADA Claim**

Defendant argues that the Court should dismiss this action because Plaintiff's ADA claim is time-barred. (Doc. 12 at 5.) Plaintiff argues that this action was timely filed because he received his right-to-sue notice on September 30, 2014. (Docs. 18, 23.)

The federal limitations period for bringing an ADA claim is ninety days from the receipt of a right-to-sue notice from the EEOC. *See* 42 U.S.C. § 2000e-5(f)(1) (Title VII limitations period is ninety days); 29 U.S.C. § 626(e) (ADEA limitations period is ninety days); 42 U.S.C. § 12217(a) (ADA limitations period is borrowed from Title VII actions, which is ninety days). If a litigant does not file suit within ninety days, the claim is time-barred. *See Nelmida v. Shelly Eurocars, Inc.*, 112 F.3d 380, 384 (9th Cir. 1997) (recognizing that the ninety-day period is a statute of limitations); *Scholar v. Pacific Bell*, 963 F.2d 264, 267 (9th Cir. 1992) (holding that the requirement of filing a civil action within ninety days from the date the EEOC dismisses a claim constitutes a statute of limitations); *Edwards v. Occidental Chem. Corp.*, 892 F.2d 1442, 1445 (9th Cir. 1990) (citing 42 U.S.C. § 2000e-5(f)(1)). This limitations period is enforced strictly against pro se and represented litigants. *Payan v. Aramark Mgmt. Servs. Ltd. P'Ship.*, 495 F.3d 1119, 1127 (9th Cir. 2007); *see also Baldwin Cnty. Welcome Cntr. v. Brown*, 466 U.S. 147, 150 (1984) (dismissing a pro se Title VII complaint filed outside of limitations period). Because the statute of limitations is an affirmative defense, Defendant bears the burden of proving that Plaintiff filed his ADA claim beyond the limitations period. *See*

*Tovar v. U.S.P.S.*, 3 F.3d 1271, 1284 (9th Cir. 1993) ("In every civil case, the defendant bears the burden of proof as to each element of an affirmative defense.").

In the Amended Complaint, Plaintiff states that he received the right-to-sue notice on September 24, 2014. (Doc. 9 at 3.) Defendant argues that the cause of action is untimely because it was filed on December 29, 2014, more than ninety days after Plaintiff received the notice of right to sue. (Doc. 12 at 5-6.) In response to Defendant's motion, Plaintiff argues that he received the right-to-sue notice on September 30, 2014, which would make his lawsuit timely filed on the last day of the limitations period. (Doc. 18 at 2; Doc. 23 at 1.) Plaintiff attaches the right-to-sue notice to his response. (Doc. 18-1 at 2-3.) The notice indicates that it was mailed on September 24, 2014. (*Id.*) Defendant argues that Plaintiff's cause of action is untimely because Plaintiff is presumed to have received the right-to-sue notice within three days of mailing, or on September 27, 2014. (Doc. 21 at 3 (citing *Payan*, 495 F.3d at 1125).)

In the Ninth Circuit, when a claimant does not dispute receipt of a right-to-sue notice from the EEOC, the notice is presumed to have arrived three days after it was mailed. *See Payan*, 495 F.3d at 1125-26. However, the three-day presumption can be rebutted with "evidence suggesting that the receipt was delayed beyond the presumed period." *Id* at 1126. However, "general claims that mail is sometimes delayed" and unsupported conjecture does are not sufficient to rebut the presumption. *Id.* at 1126; *see also Gonzales v. Harrah's Operating Co., Inc.*, 2013 WL 6284172, at *5 (D. Nev. Dec. 4, 2013) (general allegations about weather and mail delivery during winter months was insufficient to rebut the three-day presumption). Rather, to rebut that presumption, a plaintiff must establish that he "did not receive the EEOC's right-to-sue letter in the ordinary course." *Payan*, 495 F.3d at 1126. In *Payan*, the court found that the plaintiff did not rebut the three-day receipt presumption because she merely claimed that mail was sometimes delayed. *Id.* at 1127. There, the court held that the plaintiff's claim was barred by the ninety-day limitations period because she filed her lawsuit three days late. *Id.*

- 5 -

1    In his response and supplemental response, Plaintiff asserts that the delivery of the right-to-sue notice was delayed because he moved to a new apartment complex in July or August 2014 and the post office had trouble rerouting mail to that apartment complex. (Doc. 18 at 2; Doc. 23 at 1.) Plaintiff explains he was one of the first tenants to move into the new apartment complex and that the complex mailing address was not recognized by the post office for at least four months.[6] (Doc. 23 at 1.) He states that the City of Chandler made a mistake regarding the zip code that was to be assigned to the complex. (*Id.*) To support that assertion, Plaintiff submitted an October 2014 email exchange between Laura Habetler, the community manager at Avilla Rental Homes at 901 S. Alma School Road in Chandler, Arizona, and Ernest Brunetto with Meb management services. (Doc. 23 at 4.) The email exchange states that "due to a special adjustment on route C011, the entire zip code has been locked. This will prevent us from inputting the individual apartment addresses at 901 S. Alma School [and] 900 S. Alma School." (*Id.*) A November 7, 2014 e-mail states that Brunetto added the units at 901 Alma School Road to the database and that "[t]hey will be in [the] carriers' delivery starting Monday." (Doc. 23 at 5.) Plaintiff argues that, considering the problems with the zip code at his new apartment complex, the presumption that he received the right-to-sue notice within three days of mailing date should not apply. (Doc. 23 at 1.)

Unlike *Payan*, Plaintiff's description of the mail problems at his new apartment complex is not a "general claim[] that mail is sometimes delayed." *See Payan*, 495 F.3d at 1126. Rather, it is based on specific mail-delivery issues related to the zip code for his new apartment complex. Thus, the Court finds that Plaintiff has presented "evidence suggesting that the receipt was delayed beyond the presumed period," and finds this action timely filed. Accordingly, the Court rejects Defendant's argument that this action should be dismissed as untimely.

---

[6] The docket reflects that Plaintiff's mailing address is 901 S. Alma School Road, Unit 13, Chandler, Arizona 85224.

- 6 -

**IV.     Plaintiff Released his ADA Claim**

To support its motion for summary judgment, Defendant also asserts that Plaintiff's ADA claim fails because he waived and released his right to bring all employment claims, including an ADA claim. (Doc. 12 at 4.) Plaintiff does not dispute that he signed a release or that the release waived his right to bring his ADA claim. (Doc. 18 at 2, Doc. 23, Doc. 24.) Rather, he argues that he was forced to sign the release. (Doc. 18 at 2.) He also argues that the release should not apply because his suit is based on disability discrimination, not poor performance or "breaking contracts." (*Id.*) As discussed below, the Court finds that the release applied to Plaintiff's ADA claims, there is no genuine issue regarding whether Plaintiff was forced to sign the release, and Plaintiff executed the release, which released Plaintiff's ADA claim asserted in this action.

**A.     The Release**

The legal authority Defendant cites supports the conclusion that Plaintiff's release waived his ADA claim. "[T]here is a compelling public interest and policy in upholding and enforcing settlement agreements voluntarily entered into." *Bianchi v. Perry*, 140 F.3d 1294, 1297 (9th Cir. 1998) (quoting *Bank of Am. Nat'l Trust & Sav. Ass'n v. United States*, 23 F.3d 380, 383 (Fed. Cir. 1994)). Consistent with that policy, courts within the Ninth Circuit enforce agreements that waive and release ADA claims. *See Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840 (9th Cir. 2004) (holding that the settlement agreement executed by the plaintiff waived his ADA claim); *Sowell v. Freescale Semiconductor, Inc.*, 2008 WL 2941269, at *6-7 (D. Ariz. Jul. 25, 2008) (holding that the plaintiff's ADA and Title VII claims were barred by a release signed as part of a severance package, and recognizing that public policy favors voluntary settlement of employment discrimination claims brought under federal statutes).

In *Pardi*, the Ninth Circuit enforced a settlement agreement between an employer and a former employee. *Pardi*, 389 F.3d at 848. Pursuant to the settlement agreement, the former employee released all claims for actions that occurred during his employment.

1 *Id*. Specifically, the former employee released "all claims arising from [his] employment
2 with [employer] prior to the date of his execution of the Settlement Agreement, including
3 but not limited to, individual claims under federal, state, or local laws prohibiting
4 employment discrimination and any claim for attorneys' fees." *Id.* at 846. The Ninth
5 Circuit rejected the former employee's claim that the settlement agreement was invalid,
6 and affirmed the district court's dismissal of claims, including the former employee's
7 ADA claim, which arose before the settlement agreement was executed. *Id.* at 848.

8 Similar to the plaintiff in *Pardi*, Plaintiff signed a release that waived any and all
9 claims that arose from or were related to his employment or the termination of his
10 employment with GECRB. (Doc. 12, Ex. 2) The release in this case is more specific
11 than the one in *Pardi* because it states that the release included any and all "claims of
12 discrimination . . . on the basis of . . . disability." (*Id* at 1.) Thus, the Court rejects
13 Plaintiff's assertion that the release does not apply to his claim of disability
14 discrimination. *See Dominguez v. BCW, Inc*., 99 F. Supp. 2d 1155, 1161 (D. Ariz. 2000)
15 (holding that the plaintiff could not assert that her release was uninformed if the claim
16 was specifically listed as a released claim).

17 Defendant also advised Plaintiff that he should consult with an attorney before
18 signing the release, that he had forty-five days to decide whether to sign the release, and
19 that he could revoke the release within seven days after signing it. (Doc. 12, Ex. 2 at 2.)
20 Plaintiff does not dispute that he signed the release and did not revoke it. In exchange for
21 the release, Plaintiff received, among other benefits, a severance payment and subsidized
22 insurance benefits. (Doc. 12, Ex. 2 at 1; Ex. 1.) To determine whether Plaintiff
23 effectively released his ADA claim, the Court considers whether Plaintiff was forced to
24 sign the release.

25 **B.  Plaintiff was not Forced to Sign the Release**

26 In his response, Plaintiff argues that he was forced to sign the release to receive
27 lay off pay. (Doc. 18 at 2.) Defendant agrees that Plaintiff was required to sign the
28

release to receive lay off pay. (Doc. 21 at 2.) However, they argue that Plaintiff was not forced to sign the release. (*Id.*)

The record reflects that on January 15, 2014, Plaintiff was notified that his employment would end in sixty calendar days. (Doc. 12, Ex. 1.) At the same time, Defendant gave Plaintiff a copy of the release, and informed him that he would be required to sign and return it to receive a severance payment. (Doc. 12, Ex. 2.) Plaintiff was given forty-five days to consider whether to sign the release. (Doc. 12, Ex. 2 at 2-3.) Plaintiff waited fifty-six days before he signed the release on March 12, 2014. (*See* Doc. 12, Ex. 2 at 3.) The release is just over two pages long. (Doc. 12, Ex. 2.) The first page of the release describes in plain language the claims it released. (*Id.* at 1.) Defendant advised Plaintiff to consult with an attorney before signing the release. (*Id.* at 2.) Additionally, Plaintiff was permitted to revoke his acceptance of the release within seven days of signing it. (*Id.*) Plaintiff does not allege that he attempted to revoke his release.

After review of the record, the Court finds that Plaintiff has not offered evidence sufficient to create a genuine issue of fact regarding his claim that he was forced or coerced to sign the release under duress or out of fear of not receiving layoff pay or being forced into retirement. (Doc. 18 at 2.); *see Stroman v. W. Coast Grocery Co.*, 884 F.2d 458, 463 (9th Cir. 1989) (upholding a former employee's release of all claims and finding that there was no evidence whatsoever that the plaintiff was coerced into signing the agreement, noting that the plaintiff waited "several days" to sign the agreement and finding no evidence that the plaintiff was discouraged or prevented from seeking legal advice before signing the release). Because Plaintiff released his ADA claim, Defendant is entitled to judgment as a matter of law.

**V.  Conclusion**

Because there is no genuine dispute that Plaintiff released all claims against Defendant that arose during his employment, including any claims for disability

1 discrimination under the ADA, Defendant is entitled to judgment as a matter of law and
2 the Court enters summary judgment in Defendant's favor.
3     Accordingly,
4     **IT IS ORDERED** that Defendant GE Capital Retail Bank's Motion to Dismiss
5 (Doc. 12), which the Court converted to a motion for summary judgment (Doc. 22), is
6 **GRANTED**.  The Clerk of Court shall enter judgment in favor of Defendant and
7 terminate this action.
8     Dated this 1st day of May, 2015.

_____
Bridget S. Bade
United States Magistrate Judge